No. 19,642.

PUEBLO *v.* THE LEACH REALTY COMPANY.
(368 P. [2d] 195)

Decided January 15, 1962.   Rehearing denied February 5, 1962.

Mr. GORDON D. HINDS, for plaintiff in error.

Mr. HARPER L. ABBOT, for defendant in error.

*En Banc.*

Mr. Justice Sutton delivered the opinion of the Court.

This is an action by a real estate broker for a sales commission. We shall refer to the parties as they appeared in the trial court where Leach was plaintiff and the City of Pueblo was the defendant.

The pertinent facts are: In 1954 defendant abandoned its municipal airport, moving to a different location. Desiring to sell the old airport land it appointed all licensed real estate brokers in the City of Pueblo as its non-exclusive sales agents. Part of the lands (22.714 acres) were placed on the market by defendant for a shopping center site, i.e., as a "Commercial Area" appraised at $15,000.00 per acre. When no sale was readily made of this parcel defendant in 1956 decided it would offer it for sale in thirds, viz., approximately 7½ acre tracts. On May 27, 1957, Safeway Stores, Inc., made an offer to purchase 7½ acres of the choicest lands, which offer was rejected as not in accord with defendant's terms and conditions Safeway's agent then (without authority) agreed to a suggestion to alter its bid to a different part of the area; Safeway rejected the change when notified and reinstated its original offer. In the meantime however on June 17, 1957, plaintiff submitted on behalf of his clients J. S. Dillon & Sons Stores, Inc., a written instrument wherein it sought to purchase the entire tract. It labelled this an "Offer to Purchase." Plaintiff asserts, however, that this was in fact an acceptance of the City's listed terms to sell; that, with a slight immaterial variation, it met all the terms and conditions laid down by the city in its rules governing the city's subdivision efforts; and that the acceptance was adapted from a printed form furnished by Pueblo, the caption of which did not correctly describe the transaction.

Also, on June 17th the Sam Jones Agency on behalf of W. K. Hurd & Associates made an offer to purchase

this land. Pueblo's Planning and Zoning Commission, to which both the Safeway and plaintiff's offers were made, on the same day recommended to the City Council that plaintiff's offer be a c c e p t e d . The Council failed to act on June 17th, postponing action until June 24th when it again delayed the matter for further study. At its June 24th meeting the Sam Jones Agency offered to take all land left in the parcel not wanted by Safeway. On June 28th after a full hearing the Council voted to accept Safeway's offer coupled with the Sam Jones Agency offer. Suit for a commission in the amount of $34,071.00 on behalf of plaintiff, which negotiated the offer of J. S. Dillon & Sons followed. Trial resulted in a jury verdict of $17,535.00 for plaintiff. No cross error is assigned.

Pueblo urges eight grounds for reversal. These may be summarized as follows:

1. There was no contract between the parties unless and until submitted offers were accepted by defendant;

2. The exercise of the Pueblo Council's discretion was the act of a public body in its proprietary capacity in making the sale and cannot be attacked in the absence of allegation and proof of fraud or bad faith; and

3. Plaintiff's counsel allegedly improperly asserted fraud and bad faith in his remarks to the jury when he failed to allege or prove such grounds.

■ Here no binding contract for the sale of the property involved to plaintiff's prospect was formalized by defendant. This does not mean however that the plaintiff broker did not earn his commission upon performance of his part of the listing agreement by producing a purchaser ready, willing and able to buy upon the terms and conditions prescribed by the defendant. The transaction failed only because the defendant failed and refused to perform its part of the agreement and not because of any act of the broker or purchaser. If a seller does not perform once a qualified buyer is produced by his broker the seller cannot thereby escape the payment of the agreed commission. The fact that plaintiff's per-

formance was in the particular written form in dispute is immaterial to the question to be decided here. Plaintiff was first in time with his acceptance of the offer of the city and the following rule set forth in 12 C.J.S. Brokers Sec. 92, p. 213 applies:

"Where several independent and rival brokers are employed to effect the same transaction, only one commission is to be paid and that is to be paid in full to the broker who *first* succeeds and is the procuring cause of the transaction." (Emphasis supplied.)

■ The rule is also applicable here that a unilateral offer (here of defendant) to contract, may be accepted by the performance of an offeree. See *Denver Truck Exchange v. Perryman,* 134 Colo. 586, 307 P. (2d) 805.

■ As to defendant's second ground for reversal it admits that it was engaged in a proprietary function in entering the subdivision business. We point out that plaintiff was only asserting his right to commission under a non-exclusive listing agreement and was not attempting to question the validity of any contract, consequently, allegations and proof of fraud or bad faith were not in issue here.

■ We find no merit in defendant's third charge that fraud and bad faith were improperly asserted by plaintiff's counsel in his argument to the jury when he used the expression "syndicate" in describing the Safeway-Hurd combination. Several witnesses used this term during the trial to describe the joint effort of two successful purchasers. Any connotation of opprobrium from its use must lie wholly in the consciences of the purchasers. Certainly no error can be predicated on its use in these circumstances. Nor do we agree that the term in and of itself is necessarily derogatory.

The judgment is affirmed.